**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TYCO ELECTRONICS** | : | |
| **CORPORATION,** | : | **No. 1:10-cv-01807** |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | **(Magistrate Judge Methvin)** |
| **MILWAUKEE ELECTRIC TOOL** | : | |
| **CORPORATION,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the Court is Plaintiff Tyco Electronics Corporation's motion for partial judgment

on the pleadings.  (Doc. No. 72.)  For the reasons that follow, the Court will deny the motion.

## I.      BACKGROUND[1]

Plaintiff manufactures electronic components for consumer and industrial products,

including custom and specialty products.  (Doc. No. 1 ¶¶ 6-7; Doc. No. 33 at 1.)  Plaintiff

initiated this action by filing a complaint on August 30, 2010, against Defendant Milwaukee

Electric Tool Corporation, a manufacturer and marketer of portable electric power tools and

accessories. (Doc. No. 1 ¶ 8; Doc. No. 33 at 2.)

Defendant and Plaintiff had a longstanding commercial relationship, whereby Defendant

purchased power tool switches from Plaintiff.  On December 3, 2007, Plaintiff delivered notice

by letter that it would be leaving the power tool switch business.  Plaintiff offered to accept new

---

[1] In reviewing a motion for judgment on the pleadings, a court must accept the nonmovant's allegations as true and view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party.  Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005).  Thus, unless otherwise noted, the Court's analysis is guided by the facts set forth in Defendant's amended answer to Plaintiff's complaint.  (Doc. No. 33.)

orders from existing customers until the close of business on February 15, 2008.  (Doc. No. 1 ¶¶ 12-14; Doc. No. 33 at 2.)  Between December 2007 and February 2008, Defendant made purchase orders for power tool switch products totaling approximately $6.3 million.  (Doc. No. 1 ¶ 17; Doc. No. 33 at 3.)  Defendant's purchase orders specified the items ordered, the quantity ordered, the required delivery date, and the price.  (Doc. No. 1 ¶ 19; Doc. No. 33 at 3.)  Defendant's purchase order "expressly limit[ed] acceptance to the terms and conditions stated" in that document, including a reservation of "the right to cancel [the] order or any portion of same if delivery is not made when and as specified."  (Doc. No. 1 ¶ 20; Doc. No. 33 at 4.)

Plaintiff acknowledged receipt of Defendant's purchase orders by sending a sales order acknowledgment form, which expressly limited acceptance of Defendant's order to the terms and conditions set forth on the acknowledgment, any attachment thereto, and Plaintiff's website.  (Doc. No. 1 ¶¶ 21-22; Doc. No. 33 at 4.)  Among the terms and conditions attached to the acknowledgment form was a cancellation charge term, which stated:

> Any attempt to cancel or refuse delivery . . . or to reschedule shipment or change the specifications . . . will be a breach of contract and is . . . subject to cancellation charges . . . in an amount . . . equal to the special items that are finished at the time of your cancellation, plus the value of work in process and inventory not to exceed the contract price for the special items cancelled.

(Doc. No. 1 ¶ 23; Doc. No. 33 at 4.)  The sales acknowledgment also referenced the terms and conditions on Plaintiff's website, which provide that if a buyer cancels a purchase of a custom product, Plaintiff could charge, at its discretion, the entire amount of the purchase order.  (Doc. No. 1 ¶ 25; Doc. No. 33 at 5.)  Defendant asserts that it never agreed to the terms on Plaintiff's sales acknowledgment or website.  (Doc. No. 33 at 7.)

On March 26, and April 4, 2008, Defendant asked Plaintiff to reduce, and ultimately stop production on Defendant's then outstanding orders.  (Doc. No. 33 at 12.)  On April 21, 2009, Defendant faxed Plaintiff copies of its purchase orders with an "X" written across them along with the words "cancelled," and issued new purchase orders for a reduced quantity of switches. (Doc. No. 1 ¶¶ 26-28; Doc. No. 33 at 5.)  On June 5, 2008, Plaintiff wrote Defendant, asserting that it could charge Defendant $4.1 million in cancellation fees pursuant to the terms and conditions listed on Plaintiff's website, but that it mitigated its damages, and seeks a total cancellation charge of $2,965,860.  (Doc. No. 1 at 41-44; Doc. No. 33 at 12.)

Defendant refused to pay the charges that Plaintiff sought because they were greater than the amount that Defendant would be obligated to pay under a risk-sharing policy that Defendant developed with Plaintiff throughout the parties' longstanding purchaser-supplier relationship. Under the policy, referred to by the Defendant as the 4-4-4 policy, Defendant could reduce the number of products on an order and would only be obligated to pay for "4 weeks of finished goods, 4 weeks of [work-in-process] and 4 weeks of unique raw material" that Plaintiff had on hand.  (Doc. No. 33 at 16.)  Defendant denies that the purchases were non-cancelable orders. (Id.)  Defendant further asserts that, instead of paying the cancellation fees that Plaintiff sought, it agreed to place additional orders in excess of $1 million to help alleviate any damages that Plaintiff suffered.  (Doc. No. 33 at 12-13.)

Despite several months of negotiation, the parties failed to resolve their dispute.  On August 30, 2010, Plaintiff initiated this action by filing a complaint, setting forth causes of action sounding in breach of contract and promissory estoppel.  (Doc. No. 1.)

## II.     STANDARD OF REVIEW

Any time after the pleadings close and so as not to delay trial, a party may move for a judgment on the pleadings.  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings will not be granted unless the moving party clearly establishes that there are no material issues of fact, and he or she is entitled to judgment as a matter of law.  DiCarlo v. St. Mary Hosp., 530 F.3d 255, 259 (3d Cir. 2008).  In reviewing a motion for judgment on the pleadings, a court must accept the nonmovant's allegations as true and view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party.  Sikirica, 416 F.3d at 220.

## III.    DISCUSSION

Plaintiff argues that the Court should enter partial judgment on the pleadings against Defendant as to liability for breach of contract, because the parties agreed to the essential terms of a contract and Defendant unilaterally cancelled and refused to perform, thereby breaching the contract.  (Doc. No. 76 at 10.)  Plaintiff argues that neither party's terms on cancellation govern, because the terms on the parties' respective forms differed.  Defendant argues that the terms in its purchase order permitted cancellation, and that Plaintiff's inclusion of additional terms did not alter the contract.  Further, Defendant argues that the parties' course of dealing permitted Defendant to amend its purchase orders.  (Doc. No. 82 at 4.)

The Uniform Commercial Code is a uniform act governing the sale of goods, which has been adopted in Pennsylvania and several other jurisdictions.  Section 2-207 of the UCC, codified in Pennsylvania at 13 Pa. Cons. Stat. § 2207, allows parties to commercial transactions to enforce their agreements despite the existence of additional or different terms:

(a) **General rule.**  A definite and seasonable expression of

4

acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

**(b) Effect on contract.**  The additional terms are to be construed as proposals for addition to the contract.  Between merchants such terms become part of the contract unless:

(1) the offer expressly limits acceptance to the terms of the offer;

(2) they materially alter it; or

(3) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

**(c) Conduct establishing contract.**  Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract.  In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this title.

Section 2207 applies when the parties "conduct establishes a contract, but the parties have failed to adopt expressly a particular writing as the terms of their agreement, and the writings exchanged by the parties do not agree." Step-Saver Data Sys. v. Wyse Tech., 939 F.2d 91, 98 (3d Cir. 1991).  The rule is a departure from the common law mirror-image rule, whereby a purported acceptance that did not mirror the terms of an offer operated as a counteroffer rather than an acceptance.  See id. at 99.

Neither party disputes that the parties' exchange of purchase orders and acknowledgments, which agreed on the essential terms, was sufficient to create a contract for the

sale of power tool switch products under Section 2207.  The fact that both parties included

boilerplate language limiting acceptance to the terms included in their forms is not sufficient to

preclude formation of a contract.  See Daitom, Inc. v. Pennwalt Corp., 741 F.2d 1569, 1577 (10th

Cir. 1984) (applying Pennsylvania law).  However, the parties disagree as to how Section 2207

affects the terms of the contract.  Plaintiff asserts that the terms included in its acknowledgment

form constitute "different" terms, thereby implicating the knockout rule, under which neither

party's inconsistent terms would govern and the UCC's gap filler terms would apply.  On the

other hand, Defendant argues that the terms included in Plaintiff's acknowledgment were merely

"additional" terms, and that the terms did not become part of the contract pursuant to Section

2207(b).  Instead, Defendant argues that its terms, which permit it to cancel an order "if delivery

is not made when and as specified," govern.  Further, Defendant argues that even if the knockout

rule applies, the parties' course of dealing, specifically the 4-4-4 policy, would provide the terms

on cancellation and damages.

　　　　First, the Court finds that Plaintiff's terms on cancellation are different, rather than

additional.  Additional terms in an acceptance or acknowledgment are terms "for which no

comparable provisions appear in the offer."  Flender Corp. v. Tippins Intern., Inc., 830 A.2d

1279 (Pa. Super. Ct. 2003).  Plaintiff's terms on cancellation are not additional terms, because

they are comparable to the terms in Defendant's purchase order.  Defendant's purchase order

reserved Defendant's right to cancel all or any part of the order if delivery is not made when and

as specified, whereas Plaintiff's acknowledgment expressly provides that cancellation of the

items will be a breach of contract.  Thus, the terms are different rather than additional.

　　　　While Section 2207(b) sets forth the standard for determining if additional terms should

6

be included in a contract, Section 2207 "is silent on the treatment of terms stated in the

acceptance that are <u>different</u>, rather than merely additional, from those stated in the offer."

<u>Daitom</u>, 741 F.2d at 1578.  Where forms include different terms, courts in Pennsylvania apply

what is know as the knockout rule in order to determine the terms of the contract.  <u>Flender</u>, 830

A.2d at 1285-86; <u>Reilly Foam Corp. v. Rubbermaid Corp.</u>, 206 F. Supp. 2d 643, 655 (E.D. Pa.

2002); <u>Daitom</u>, 741 F.2d at 1578-79.

> Under [the knockout rule] the offeree's form is treated only as an
> acceptance of the terms in the offeror's form which did not conflict.
> The ultimate contract, then, includes those non-conflicting terms and
> any other terms supplied by the U.C.C., including terms incorporated
> by course of performance (§ 2-208), course of dealing (§ 1-205),
> usage of trade (§ 1-205), and other "gap fillers" or "off-the-rack"
> terms (e.g., implied warranty of fitness for particular purpose, §
> 2-315).

<u>Daitom</u>, 741 F.2d at 1579.

Thus, the contract between Plaintiff and Defendant consists of the terms upon which the

parties agreed, and the inconsistent terms regarding cancellation are "knocked out."  Plaintiff

argues that the terms on cancellation should be filled with the UCC's gap filler provision on

anticipatory repudiation.  (Doc. No. 76 at 21.)  That rule provides that when a party repudiates a

contract with respect to performance not yet due, the other party may treat the repudiation as a

breach of contract.  13 Pa. Cons. Stat. § 2610.  Defendant argues, however, that even if the

knockout rule is applied, the parties' course of dealing would provide the missing term.  (Doc.

No. 82 at 13.)

The Court agrees that the parties' course of dealing may supply the missing terms created

by the knockout rule.  <u>See Daitom</u>, 741 F.2d at 1579 (explaining that inconsistent terms should

be replaced by UCC gap fillers, including course of performance, course of dealing, and usage of trade); Flender, 830 A.2d at 1286 (same).  "A 'course of dealing' is a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct."  13 Pa. Cons. Stat. § 1303(b).  Throughout Defendant's answer and affirmative defenses, Defendant references a 4-4-4 policy governing adjustments to Defendant's orders.  For example, in its fourth affirmative defense, Defendant avers that it "did not breach the contract or any purchase agreement because it adjusted what Tyco deems the 'last time buy orders' pursuant to the adjustment provisions set forth in the 4-4-4 policy."  (Doc. No. 33 at 8.)  Defendant also denies that its purchase orders were "non-cancelable orders that overrode [its] 4-4-4 policy."  (Doc. No. 33 at 3.)  At this stage, without the benefit of discovery, the Court must accept all of Defendant's factual allegations as true and view all facts and inferences in the light most favorable to Defendant.  Defendant's allegations regarding the 4-4-4 policy are sufficient to preclude judgment on the pleadings as to liability for breach of contract.

## IV.   CONCLUSION

Defendant has sufficiently alleged a course of dealing that permitted adjustment and cancellation of purchase orders.  Thus, the Court declines to hold that Defendant breached its contract with Plaintiff without the benefit of a factual record.  Accordingly, the Court will deny Plaintiff's motion for judgment on the pleadings.

An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TYCO ELECTRONICS** | : | |
| **CORPORATION,** | : | **No. 1:10-cv-01807** |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | **(Magistrate Judge Methvin)** |
| **MILWAUKEE ELECTRIC TOOL** | : | |
| **CORPORATION,** | : | |
| **Defendant** | : | |

## ORDER

**AND NOW**, on this 9th day of October 2012, **IT IS HEREBY ORDERED THAT**

Plaintiff Tyco's motion for partial judgment on the pleadings (Doc. No. 72) is **DENIED**.

   S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania

9